```
               UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON


JOE FREDDY RIFFE,

       Plaintiff,

v.                                  CIVIL ACTION NO: 2:12-4460

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.
```

## MEMORANDUM OPINION AND ORDER

On August 17, 2012, plaintiff instituted this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C.A. § 405(g). The sole issue before the court is whether the decision denying plaintiff's claim for income and benefits is supported by substantial evidence. See 45 U.S.C.A. § 405(g). The parties have filed no briefs and engaged in no motion practice.[1]

---

[1] Local Rule of Civil Procedure 9.4(a) directs the plaintiff to file a brief in support of the complaint no later than 30 days following service of the administrative record. That filing triggers the Commissioner's response, which is due no later than 30 days thereafter. Counsel's compliance with Local Rule 9.4(a) is essential for the proper prosecution of his client's appeal and the analysis to be performed by the

By standing order this action was referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge. On August 29, 2013, the magistrate judge filed his Proposed Findings and Recommendation ("PF&R"). In the PF&R, the magistrate recommends that the Commissioner's final decision be affirmed and this matter dismissed from the docket.

On September 16, 2013, plaintiff filed his objections. First, plaintiff asserts that the administrative law judge ("ALJ") improperly rejected the vocational expert's testimony that no work existed for a hypothetical individual with the physical and mental impairments found in questions two and three that were put to the expert by the ALJ. Second, plaintiff asserts that the ALJ improperly concluded that the plaintiff's testimony regarding his physical and psychological limitations was not credible. Third, plaintiff asserts that the ALJ inadequately explained her reasons for failing to properly weigh the opinions of treating physician James Stollings, D.O., and evaluating psychologist Mary Walker.

---

magistrate judge inasmuch as it frames the issues on review. That framing comes too late when it occurs for the first time upon the filing of objections under Federal Rule of Civil Procedure 72. Counsel is directed in future cases to comply with the requirements of the Local Rules of Civil Procedure.

Respecting the first challenge, the ALJ engaged in three relevant colloquies with the vocational expert.[2]  Each one appears below:

> **QUESTION ONE COLLOQUY (Admin. Rec. at 47):**
>
> Q Let's assume the claimant has a residual functional capacity for light work. Should never climb ladders, ropes, or scaffolds. Can occasional[ly] perform other postural activities.  Should avoid concentrated exposure to extreme cold, extreme heat. Should avoid even moderate exposure to excessive vibration and hazards of moving machinery and unprotected heights.
>
> Q With those limitations, would he be able to perform any of his past work?
>
> A I don't believe he could because of the exertional level, Your Honor.
>
> Q And, assuming a hypothetical individual the same age, education, and work background as the claimant's, with that residual functional capacity, are there other jobs that he could perform?
>
> A Yes, Your Honor. I think certainly we could consider any of a variety of semiskilled, sales clerk type positions from sales of hardware and general merchandise. . . .

---

[2] Plaintiff's counsel refers to only two hypothetical questions but provides the same pinpoint citation information for both, namely, "Hrg. Transcript, Pg. 25, Listed as Exhibit Page 49 at the bottom of the page and Page 50 at the top of the Page, Lines 6-25."  (Pl.'s Objecs. at 4).  The question and answer found at the pinpoint citation appears to reference the third hypothetical question identified by plaintiff.  The second question he identifies appears at pages 48-49 of the administrative record.  In order to capture the entirety of the relevant questions and answers posed to the vocational expert, the court will instead refer to the interchanges as colloquies.

**QUESTION TWO COLLOQUY (Admin. Rec. at 48-49):**

Q Let's assume a hypothetical individual is reduced two or more days off, requires the use of a cane to walk. Really should never push or pull with the left upper extremity. Should never use the foot control operations on the right lower extremity. Never climb ladders, ropes, or scaffolds and never crawl. Can occasionally perform the other classified activities. The individual is right-hand dominant. Could never use the left non-dominant arm for gross manipulation or handling objects or fine manipulation for fingering. Like one individual has no feeling in that left hand, so they were [INAUDIBLE). Should avoid concentrated exposure to extreme cold, extreme heat, and avoid even moderate exposure to sense of vibration and should avoid even moderate exposure to the hazards of moving machinery and unprotected heights. With those limitations, are there jobs such an individual could perform?

A There might be on a limited basis. I think on or over a sustained period of time [INAUDIBLE]. Those [INAUDIBLE] and referring the use of the cane and the other limitations I think it would be good on [a] . . . sustained basis to do work in the context of the claimant.

Q Okay. So, you would not be able to identify jobs?

A Not, as long as the limitations we have are in.

**QUESTION THREE COLLOQUY (Admin. Rec. at 49):**

Q Now, consider with respect to the first hypothetical that I gave you. Add limitations of [INAUDIBLE] generic limitation on the Exhibit that was submitted, but you probably won't have a copy of 13F. Basically, the MRSC examiner opines that the individual has no useful underlying function in any areas with respect to occupational investments. Performance adjustments including understanding, remembering, and carrying out complex, detailed, or simple job instructions. Likewise, the individual could have the useful ability to make first social adjustments and in some places

> being able to adjust in an emotionally stable manner. Relating predictability to social situations or demonstrating reliability. Those just touch on the limitations. With those limitations, would that individual be able to perform the jobs that you identified in the first hypothetical or any other jobs?
>
> A No, Your Honor.

It appears that the first colloquy put to the vocational expert included the limitations ultimately found to exist by the ALJ in that portion of her decision addressing the plaintiff's residual functional capacity.  (See Admin. Rec. at 13).[3]  The remaining two colloquies included the more profound limitations urged by the plaintiff.  Those additional limitations were necessarily rejected by the ALJ.  The analysis of the plaintiff's three objections thus collapses into consideration of the second and third challenges.  This is so

---

3 The relevant portion of the ALJ's decision provides as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he may never climb ladders, ropes, or scaffolds; but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme cold and extreme heat, and even moderate exposure to excessive vibrations and hazards such as heights and machinery.

(Admin. Rec. at 13)

5

inasmuch as the additional limitations urged by the plaintiff, and found in the second and third colloquies, would only be relevant if the ALJ lacked substantial evidence for rejecting some of the opinions found therein of treating physician Dr. Stollings and evaluating psychologist Ms. Walker.

Respecting the second challenge relating to the plaintiff's credibility, there is substantial evidence to support the ALJ's conclusion as follows: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ."  (Tr. at 14).  In support of this conclusion, it is noted that the plaintiff testified that his left arm was useless.  (Tr. at 35 ("It's really useless. . . . I don't have any strength in it. . . . And, I have no feeling in it, except for the very bottom part of my hand.")).

An April 16, 2010, evaluation from Charleston Area Medical Center, however, reflects the plaintiff's report that he "[p]assed out while golfing today." (Admin. Rec. at 460).  The temperature at the time was in the upper 80s.  The ALJ also noted that while plaintiff had surgery following his motor vehicle accident that might be expected to cause some of his

symptoms, the surgery was generally successful and the surgeon who performed the procedure stated that the prognosis was good.

Further, following the April 9, 2009, follow-up visit with the surgeon Dr. Crompton, the ALJ noted no indication that plaintiff visited him anew with complaints respecting the surgical outcome. Also noteworthy is a significant overstatement uttered by the plaintiff during his testimony, only a portion of which was analyzed by the ALJ. The ALJ noted that the plaintiff testified to dropping 50 or 60 pounds since the December 2008 accident from loss of appetite. She noted, however, that he weighed 200 pounds according to an April 2010 admission summary. A further examination of the record discloses that the plaintiff weighed 195 pounds when he visited the emergency room on December 6, 2008, immediately after his motor vehicle accident.

The ALJ thus permissibly treated the plaintiff as having diminished credibility. The ALJ additionally concluded that the plaintiff's exaggerated appraisal of his alleged physical ailments caused her to question the nature and extent of his alleged mental impairments. She further noted that (1) he listed no mental impairments when his application for benefits was filed, and (2) while he attempted to minimize his

7

cognitive functioning and socialization with others, other admissions he offered, such as attending church regularly, earning average grades in school, and formerly holding a supervisory employment position all led to opposing inferences. It is also noted that plaintiff was with a friend during the 2010 golfing episode described above.

For all of the foregoing reasons, and others identified by the ALJ, the plaintiff's credibility was properly deemed to have been minimal and his self-reported ailments significantly overstated.

Respecting the ALJ's assessment of the treating physicians, the record first reflects her analysis of Dr. Stollings' views of the plaintiff in February 2009:

> [S]tability, reflexes, sensation and muscle strength and tone was normal. Furthermore, his mood and affect were normal. He reported he was currently employed. <u>The undersigned gives great weight to this treating physician's observations and opinions</u> insofar as they are consistent with the medical evidence of record.

(Admin. Rec. at 15 (citation omitted)). This excerpt thus indicates that the ALJ accepted the views of Dr. Stollings as plaintiff's treating physician in some respects.

It is the case that Dr. Stollings prescribed psychotropic medications for plaintiff and that plaintiff

8

contends that he suffered from a severe mental impairment. The plaintiff's use of the substances, however, does not necessarily mean that he is afflicted with a severe mental impairment, nor does it mean that Dr. Stollings' treating physician opinions as to his mental or emotional conditions were disregarded. As noted, the ALJ permissibly concluded that plaintiff's self-reported psychiatric problems, which likely resulted in him being prescribed the substances, were exaggerated.

Plaintiff stresses the attention he received from Ms. Walker and her views respecting his alleged mental impairments. There are, however, a variety of reasons that Ms. Walker's opinions were not treated as controlling by the ALJ. First, Ms. Walker only saw the plaintiff on a single occasion, which the ALJ noted as a "referral by his attorney." (Admin. Rec. at 11). Additionally, Ms. Walker's conclusions were partially driven by the plaintiff's self-reporting which has, again, been accorded little credibility by the ALJ. Further, the ALJ noted that plaintiff has not received routine treatment from a mental health facility. Also, the state agency non-examining psychologists unanimously concluded that the plaintiff's mental and emotional conditions did not rise to the level of a severe impairment.

For these reasons and the others expressed by the ALJ, substantial evidence and a reasoned explanation supports the ALJ's decision to accord lesser weight to the opinions of plaintiff's treating physicians.

For the reasons stated, and having reviewed the record de novo, the court ORDERS as follows:

1. That the PF&R be, and it hereby is, adopted and incorporated herein;

2. That the Commissioner's final decision be, and it hereby is, affirmed;

3. That judgment be, and it hereby is, granted in favor of the Commissioner; and

4. That this civil action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

DATED: September 23, 2013

John T. Copenhaver, Jr.
United States District Judge